UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAOHL HURSH,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br>COUNTY OF SAN DIEGO,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 08cv2249 BEN (PCL)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Defendant County of San Diego's motion for summary judgment is before the Court. (Doc. No. 43.) Plaintiff opposes the motion. (Doc. Nos. 44, 53.[1]) Defendant filed a Reply. (Doc. No.45.) For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

**BACKGROUND**

Plaintiff asserts federal claims against Defendant under 42 U.S.C. § 1983 for Defendant's failure to place him in a lower bunk and provide appropriate medical care following his fall from an upper bunk. Plaintiff also asserts a state law claim based on the failure to provide medical care after Plaintiff's fall. The facts of the case are largely undisputed. Plaintiff was a convicted prisoner in the San Diego County Central Detention Facility.

Defendant's policy dictates that, following a medical screening, a prisoner is interviewed by a classification deputy that houses him on the appropriate floor of the facility. The prisoner is then assigned a particular cell and bunk by a floor tower deputy and taken to the cell by another deputy.

---

[1] Plaintiff initially failed to file his exhibits with his Opposition to summary judgment, however, the Court allowed Plaintiff to file the missing exhibits late.

1  When a prisoner needs a lower bunk for medical reasons, but a lower bunk is not available, deputies provide the prisoner with a temporary plastic sled or "boat" that is placed on the floor of the cell with a mattress and bedding. The prisoner sleeps in the boat until a lower bunk becomes available.

When Plaintiff was booked into the facility on March 5, 2008, he was examined by a registered nurse. Plaintiff complained of chronic pain from prior injuries and walked with a limp. He was prescribed a cane and a lower bunk. The registered nurse entered this information into the Jail Information Management System ("JIMS"). When Plaintiff arrived at his assigned cell, a prisoner using a wheel chair was already assigned to the lower bunk and a boat would not fit in the cell because of the wheelchair's presence. Over the next ten days, Plaintiff asked deputies to move him to a lower bunk, but moving him to a lower bunk was continually deferred on to the next shift and he was not moved. On March 16, while exiting the upper bunk, Plaintiff's cane broke and he fell to the floor and suffered injury.

Plaintiff was taken to the medical clinic complaining of pain in his right shoulder, back, and forehead and had a small abrasion on his upper chest. His neck and shoulder x-rays were normal and he was prescribed Ibuprofin for a neck and shoulder strain. He was given Motrin and muscle relaxers daily from March 19, 2008 to April 28, 2008. Plaintiff was examined six more times over the next two months with continual improvement and a normal CT scan. He was released from custody on May 12, 2008.

**DISCUSSION**

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the burden then shifts to the opposing party to set forth specific facts showing that a genuine issue remains for trial. *Id.* at 256-57.

A moving party can meet its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or [by] show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this burden of production, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact." *Id.* at 1103 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Evidence raises a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there are genuine issues of material fact, the Court must view the evidence in the light most favorable to the non-moving party. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998).

**I.      42 U.S.C. § 1983**

Plaintiff's § 1983 claim is based on Defendant's failure to place him in a lower bunk and provide appropriate medical care following his fall. Plaintiff's claims are only asserted against the County. A municipality may only be liable under § 1983 if the municipality "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Municipalities are not liable for the conduct of their employees. *Id.* ("[Municipalities] are not vicariously liable under § 1983 for their employees' actions").

To succeed on a § 1983 claim against a municipality, a plaintiff "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "[A] policy is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).

Plaintiff does not put forth any evidence that Defendant's policy is unconstitutional, but rather argues that the absence of certain safeguards in conjunction with that policy amount to deliberate indifference to Plaintiff's constitutional rights. Specifically, Plaintiff argues that: (1) floor deputies should be obligated to report noncompliance with the policy to superiors and provide written reports; (2) a daily list should be kept of all inmates requiring medial accommodation; (3) and JIMS should contain information reflecting whether a medical accommodation has been made.

A failure to act, *i.e.*, a policy of inaction, may form the basis for municipal liability, but it "is at its most tenuous." *Connick*, 131 S. Ct. at 1359-60 (discussing failure to train); *see also Oviatt*, 954

F.2d at 1477. The failure to act must constitute deliberate indifference. *Connick*, 131 S. Ct. at 1359; *Oviatt*, 954 F.2d at 1477. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360. The standard must be high because in almost every case, a plaintiff can "point to something the [county] 'could have done' to prevent the unfortunate incident." *Canton*, 489 U.S. at 391-92 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). Allowing a case to proceed against a municipality on such a basis "would result in de facto *respondeat superior* liability on municipalities," a result the Supreme Court has rejected. *Id.* (citing *Monell*, 436 U.S. at 693-94).

A pattern of violations is "ordinarily necessary" to demonstrate deliberate indifference. *Connick*, 131 S. Ct. at 1360. The Court cannot find that a policymaker deliberately chose a deficient course of action — not implementing Plaintiff's proposed safeguards — without Defendant knowing of the deficiency. *Id.* Plaintiff has certainly identified ways that Defendant might ensure greater deputy compliance with its policy, but has not identified any evidence that would have put Defendant on notice of the need for Plaintiff's suggested changes.

Plaintiff's assertion that multiple deputies failed to put him in a lower bunk does not establish the requisite pattern because "contemporaneous . . . conduct cannot establish a patter of violations that would provide 'notice to the [county] and the opportunity to conform to constitutional dictates.'" *Id.* at 1360 n.7 (quoting *Canton*, 489 U.S. at 395) (finding four different individual's lack of compliance did not establish a pattern sufficient to put municipality on notice).

Nor is the need for the changes identified by Plaintiff so "patently obvious that a [county] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 1361. This is not a situation where no policy was in place to address the medical needs of prisoners and the need for a policy was clear. *See Canton*, 489 U.S. at 390 n.10 (speculating that the need for training might be obvious if officers were armed and directed to pursuing fleeing felons without any use-of-deadly-force training). Defendant developed and implemented a policy to address prisoner's medical needs for lower bunks. Plaintiff points to no evidence to suggest a need for something more was obvious. In *Oviatt v. Pearce*, the Plaintiff relied on testimony from the final policymaker for a municipality in which the policymaker admitted knowledge of the problems with an existing policy, but decided not

to take any action after holding several meetings about the problem. *Oviatt*, 954 F.2d at 1477. Here, Plaintiff can point to no evidence that policymakers knew or should have known about any deficiency in the existing policy and the need for the safeguards Plaintiff advocates is not so "patently obvious" that Defendant could be liable without a prior pattern. *Connick*, 131 S. Ct. at 1361. While Plaintiff's suggestions might ensure greater compliance with Defendant's policy, the Court should not be second-guessing municipal policies absent a showing of deliberate indifference. *Canton*, 489 U.S. at 392.

As to Plaintiff's claim that Defendant failed to provide appropriate medical care, Plaintiff has identified no evidence of any deficiency in the medical care Defendant provided.[2] The evidence is actually to the contrary. Plaintiff received prompt and continuing medical care.

Defendant is entitled to summary judgment on Plaintiff's § 1983 claims.

## II.    State Law Claim

Plaintiff's state law claim is also based on Defendant's failure to provide appropriate medical care after his fall. As discussed above, Plaintiff identifies no evidence showing Defendant failed to provide appropriate medical care. Defendant met its burden, and Plaintiff failed to "set forth specific facts showing that a genuine issue remains for trial." *Anderson*, 477 U.S. at 256. Defendant is entitled to summary judgment on Plaintiff's state law claim.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

DATED: May 23, 2011

Hon. Roger T. Benitez
United States District Judge

---

[2] Plaintiff stated the following in his Opposition: "[f]urther, Plaintiff was denied prompt medical treatment after his injury." (Pl.'s Opp'n to Mot. for Summ. J. 2.) Other than this single sentence, Plaintiff fails to address this basis for liability. The Court need not "scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (internal quotations and citations omitted).